UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN BROYLES,

               Plaintiff,

          -against-

J.P. MORGAN CHASE & CO.,

             Defendant.
-------------------------------------------------------------X

Docket No.: 08CV03391
(WHP)
ECF Case

**COMPLAINT**

Jury Trial Demanded

      Plaintiff, by his attorney, Brian Kennedy, Esq., complaining of the Defendant, respectfully alleges as follows:

## INTRODUCTION

      1.      This is a civil action brought by John Broyles (hereinafter, "Broyles" or alternatively, "Plaintiff"), an individual, against J.P. Morgan Chase & Co. (hereinafter, "JP Morgan" or alternatively, "Defendant"), a financial services company, based upon claims for breach of an explicit oral contract, implied-in-fact contract, quasi-contract/quantum meruit, and statutory law for Plaintiff's employee compensation, causing Plaintiff the loss of his bonus that was promised by his former employer and that Plaintiff expected for calendar year 2007. In addition, Plaintiff brings a claim based upon defamation arising from factual allegations occurring after his employment terminated.

## JURISDICTION & VENUE

      2.      The court has jurisdiction in this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. §1348 in that there exists diversity between Plaintiff and Defendant, and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars ($75,000).

3.      Venue is proper in this district pursuant to 28 U.S.C.A. §1391(a) because Defendant's principal place of business is located in the Southern District of New York, and because a substantial part of the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

## PARTIES

4.      At all times herein, Broyles was and still is an individual residing in the State of New Jersey.

5.      At all times herein, Broyles was employed by Defendant from on or about October 2007 until January 2008.

6.      At all times herein, JP Morgan was and still is a corporation organized and existing under the laws of the State of Delaware, with its principal office located at 270 Park Avenue, New York, New York 10017.

7.      At all times herein, JP Morgan was and still is one of the largest global financial services firms that engages in trading of securities and commodities and provides services in private equity, asset and wealth management, investment banking, transaction processing, and securities brokerage.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      Prior to joining JP Morgan, Broyles had extensive experience as a commodities trader at several well-known and reputable investment firms.

9.      In October 2007, Broyles joined JP Morgan as a commodities trader, working at 270 Park Avenue, New York, New York (hereinafter, the "office").

10.     Broyles was hired by JP Morgan as a head trader on the natural gas desk, with the title of Executive Director of Global Commodities, a position he held until January 2008.

11.     Broyles was directly supervised at JP Morgan by Foster Smith (hereinafter, "Smith"), the Managing Director of U.S. gas and power trading in the Global Commodities group.

12.     At all times herein, Smith acted within the scope of his employment and authority in the business of and with the knowledge and consent of JP Morgan.

13.     It is common and customary practice in the financial and securities industry that employees in certain positions, similarly situated to Plaintiff, receive a compensation package including an annual bonus, which is based upon the amount of revenues that an employee generates for the firm and which is usually significantly greater than an annual salary.

14.     Before Plaintiff's employment with JP Morgan, during the negotiations for the terms of his compensation, and also during Plaintiff's employment with JP Morgan, Broyles understood from various conversations with Smith and others at JP Morgan that Plaintiff's performance would be evaluated on the amount of revenues generated for the firm in his trading book, and that Plaintiff's bonus compensation would be calculated on the same basis.

15.     In September 2007, during the above-mentioned negotiations for the terms of Plaintiff's compensation, Smith specifically advised Plaintiff that his compensation would include an annual base salary of one hundred and fifty thousand dollars ($150,000), and an annual bonus of between eleven percent (11%) and fourteen percent

(14%) of the profits in Plaintiff's trading book (hereinafter, the "bonus policy").
Furthermore, Smith advised Plaintiff that said bonus pursuant to the bonus policy would
be paid to Plaintiff based upon Plaintiff's performance in calendar year 2007, and further
years.

16.    In September 2007 and thereafter, other traders at JP Morgan confirmed to
Plaintiff that it was common and customary practice at JP Morgan that traders, similarly
situated to Plaintiff, receive a compensation package including an annual bonus of
between eleven percent (11%) and fourteen percent (14%) of the profits in their trading
book.

17.    In response to Plaintiff's concern that the above-mentioned annual salary
was significantly less than the annual salary offered to Plaintiff from other firms, Smith
assured Plaintiff that Plaintiff could reasonably expect a bonus pursuant to the bonus
policy that would more than compensate for any salary shortfall.

18.    Upon accepting employment with JP Morgan pursuant to the above-
mentioned terms, and during the course of his employment, Plaintiff faithfully and
competently fulfilled any and all of his employment responsibilities.

19.    In calendar year 2007, Plaintiff generated profits in his trading book for
the benefit of JP Morgan in the amount of approximately twenty two million dollars
($22,000,000).

20.    In calendar year 2007, Plaintiff was the most profitable energy trader in
the North American energy trading group for JP Morgan.

21.    On or about January 3, 2008, Smith and Plaintiff had a meeting in the
office in regard to the payment of Plaintiff's calendar year 2007 bonus pursuant to the

bonus policy. At this meeting, Smith told Plaintiff that Plaintiff's bonus for calendar year 2007 would be slightly less than the eleven percent (11%) of the profits in Plaintiff's trading book that was agreed upon under the bonus policy, and Plaintiff demanded his bonus promised by Smith and JP Morgan under the bonus policy.

22.     On or about January 9, 2008, before arriving to the office, Plaintiff received a telephone call from another employee at JP Morgan demanding that Plaintiff close his open trading positions. From his residence, and later at the office, Plaintiff complied with this demand, and greatly reduced his open trading positions.

23.     Upon information and belief, at about this same time in January 2008, Smith realized significant trading losses for JP Morgan.

24.     Shortly thereafter, Broyles complained to Smith that the manner in which Plaintiff was ordered to close his open trading positions caused losses for JP Morgan, and losses in Plaintiff's trading book for calendar year 2008.

25.     On or about January 16, 2008, Smith, other employees of JP Morgan, and Plaintiff had a meeting in the office in which Smith told Plaintiff that Smith had lost confidence in Plaintiff.

26.     On or about January 17, 2008, Smith and Plaintiff had a conversation in which Smith told Plaintiff that Plaintiff could resign from JP Morgan, or that Plaintiff's employment with JP Morgan would be terminated. Furthermore, in response to Plaintiff's inquiry about payment of his bonus for calendar year 2007, Smith informed Plaintiff that JP Morgan would not pay any bonus whatsoever to Plaintiff.

27.    On or about January 18, 2008, Plaintiff informed Smith that Plaintiff considered his employment terminated, and Plaintiff demanded payment from Smith and JP Morgan of his bonus pursuant to the bonus policy for calendar year 2007.

28.    JP Morgan has neglected to pay any bonus whatsoever to Plaintiff.

29.    Upon information and belief, immediately after Plaintiff's departure from JP Morgan, Keith Shoemaker (hereinafter, "Shoemaker"), another JP Morgan employee, was tasked with the responsibility of marking (or updating values based on price changes) and closing Plaintiff's open trading positions.

30.    On or about January 18, 2008, at a meeting in the office, Smith orally told a large group of JP Morgan employees, including but not limited to David Brown, that Plaintiff's employment was terminated because of his "inappropriate" conduct, and that JP Morgan will fire its employees who engage in inappropriate conduct.

31.    In or about late January 2008, Smith and Shoemaker orally told other JP Morgan employees, including but not limited to Nedim Solemeyer, Tyler Herrald, and Robert Trejo, and other financial and securities industry professionals with whom JP Morgan does business, including but not limited to Ron Lashinski and David Baker, that Plaintiff had intentionally "mis-marked" positions in Plaintiff's trading book at JP Morgan, thereby inflating the values of his positions and trading profits.

32.    The above-described statement that Plaintiff "mis-marked" positions in his trading book is akin to lying, or even fraud, in the professional context in which Plaintiff worked at JP Morgan, and would be grounds for termination of employment for cause.

33.    JP Morgan is liable for the above-mentioned conduct of Smith and Shoemaker under the principle of respondeat superior.

## COUNT I.
## BREACH OF EXPLICIT ORAL CONTRACT

34.     Plaintiff repeats, realleges, and reiterates every allegation set forth above as if fully set forth at length herein.

35.     As set forth above, Plaintiff and JP Morgan orally agreed that Plaintiff would receive bonus compensation based upon the revenues generated for the firm in his trading book, pursuant to the bonus policy.

36.     During the course of his employment, Plaintiff faithfully and competently fulfilled any and all of his employment responsibilities.

37.     Furthermore, for calendar year 2007, Plaintiff generated profits in his trading book for the benefit of JP Morgan in the amount of approximately twenty two million dollars ($22,000,000).

38.     In spite of the foregoing, after demand by Plaintiff, JP Morgan failed to pay any bonus whatsoever to Plaintiff.

39.     JP Morgan, without cause, unlawfully breached its explicit contract with Plaintiff under the bonus policy by failing to compensate Plaintiff under the terms of that agreement.

40.     As a direct consequence, JP Morgan has caused Plaintiff to suffer damages in an amount not less than two million four hundred and twenty thousand dollars ($2,420,000).

## COUNT II.
## BREACH OF IMPLIED-IN-FACT CONTRACT

41.     Plaintiff repeats, realleges, and reiterates every allegation set forth above as if fully set forth at length herein.

42.    An implied-in-fact contract arose between Plaintiff and JP Morgan as to bonus compensation.

43.    JP Morgan indicated by its policy and practice, following common and customary policy and practice in the financial and securities industry, that Plaintiff would receive compensation including an annual bonus which is usually significantly greater than an annual salary.

44.    Plaintiff reasonably relied upon this policy and practice in rendering services to JP Morgan in calendar year 2007, and reasonably expected such a bonus.

45.    In spite of the foregoing, after demand by Plaintiff, JP Morgan failed to pay any bonus whatsoever to Plaintiff.

46.    JP Morgan, without cause, unlawfully breached its implied-in-fact contract with Plaintiff by failing to compensate Plaintiff under the terms of that agreement.

47.    As a direct consequence, JP Morgan has caused Plaintiff to suffer damages in an amount not less than two million four hundred and twenty thousand dollars ($2,420,000).

## COUNT III.
## UNJUST ENRICHMENT/QUANTUM MERUIT
### (as an alternative to Breach of Contract)

48.    Plaintiff repeats, realleges, and reiterates every allegation set forth above as if fully set forth at length herein.

49.    Plaintiff provided services to JP Morgan in calendar year 2007 that generated profits in his trading book for the benefit of JP Morgan in the amount of approximately twenty two million dollars ($22,000,000).

50.    JP Morgan accepted and benefited from Plaintiff's services, and Plaintiff's success in generating revenues for JP Morgan.

51.    Plaintiff reasonably expected to be paid for his services to JP Morgan, and JP Morgan was aware of this fact.

52.    In spite of the foregoing, after demand by Plaintiff, JP Morgan failed to pay any bonus whatsoever to Plaintiff.

53.    JP Morgan's retention of the benefit of Plaintiff's services would be unjust. Therefore, JP Morgan should be required to pay Plaintiff the reasonable value of the services he provided to JP Morgan for calendar year 2007, such amount believed to be in excess of two million dollars ($2,000,000) and to be specifically determined at trial.

## COUNT IV.
## VIOLATION OF NEW YORK LABOR LAW

54.    Plaintiff repeats, realleges, and reiterates every allegation set forth above as if fully set forth at length herein.

55.    JP Morgan's willful failure to pay any bonus whatsoever to Plaintiff, under the bonus policy which is based entirely upon Plaintiff's own performance from the revenues generated in Plaintiff's trading book, constitutes willful withholding of Plaintiff's wages in violation of Article 6 of New York Labor Law.

56.    In spite of the foregoing, after demand by Plaintiff, JP Morgan failed to pay any bonus whatsoever to Plaintiff.

57.    As a direct consequence, JP Morgan has caused Plaintiff to suffer damages in an amount not less than two million four hundred and twenty thousand dollars ($2,420,000).

## COUNT V.

## PROMISSORY ESTOPPEL

58.    Plaintiff repeats, realleges, and reiterates every allegation set forth above as if fully set forth at length herein.

59.    As set forth above, Plaintiff and JP Morgan orally agreed that Plaintiff would receive bonus compensation based upon the revenues generated in his trading book, pursuant to the bonus policy.

60.    Plaintiff reasonably relied upon the promise by Smith and JP Morgan of payment of the bonus pursuant to the bonus policy in accepting the offer of employment from JP Morgan, and reasonably expected such a bonus.

61.    In spite of the foregoing, after demand by Plaintiff, JP Morgan failed to pay any bonus whatsoever to Plaintiff.

62.    As a direct consequence, JP Morgan has caused Plaintiff to suffer damages in an amount believed to be in excess of two million dollars ($2,000,000) and to be specifically determined at trial.

## COUNT VI.
## DEFAMATION

63.    The above-described statements that Plaintiff engaged in inappropriate conduct and mis-marked his trading book at JP Morgan are false.

64.    Smith and Shoemaker, acting within the scope of their employment at JP Morgan, knew or had reason to know that such statements were false, or probably false, or exercised reckless disregard for the truth, when they made such statements and published such statements without any effort to determine or investigate their truth or accuracy.

65.    The above-described statements that Plaintiff engaged in inappropriate conduct and mis-marked his trading book at JP Morgan were made in bad faith and with malice, and are reasonably likely, in and of themselves, to dishonor and discredit the professional reputation and character of Plaintiff in the estimation of others in the financial and securities industry, and to cause irreparable harm to Plaintiff's future professional and economic welfare and prospects.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(A)    On the first Count, compensatory damages in the amount of two million four hundred and twenty thousand dollars ($2,420,000), with statutory interest and costs thereon;

(B)    On the second Count, compensatory damages in the amount of two million four hundred and twenty thousand dollars ($2,420,000), with statutory interest and costs thereon;

(C)    On the third Count, compensatory damages in an amount equal to the reasonable value of services provided by Plaintiff, believed to be in excess of two million dollars ($2,000,000) and to be specifically determined at trial, with statutory interest and costs thereon;

(D)    On the fourth Count, compensatory damages in the amount of two million four hundred and twenty thousand dollars ($2,420,000), statutory liquidated damages equal to twenty five percent (25%) of the bonus compensation withheld, attorney's fees, with statutory interest and costs thereon;

(E)     On the fifth Count, compensatory damages in an amount believed to be in excess of two million dollars ($2,000,000) and to be specifically determined at trial, with statutory interest and costs thereon;

(F)     On the sixth Count, compensatory damages in an amount believed to be in excess of two million dollars ($2,000,000) and to be specifically determined at trial, and punitive damages, with statutory interest and costs thereon; and,

(G)     Such other and further relief as the court deems just, proper, and equitable under the circumstances.

PLEASE TAKE NOTICE, that Plaintiff demands a jury trial on all of the foregoing counts.

Dated:  New York, New York
        April 7, 2008

                            Yours, etc.;

                            _____S/_____
                            BRIAN KENNEDY, ESQ. (BK 8588)
                            Attorney(s) for Plaintiff
                            535 Fifth Avenue, 23rd Floor
                            New York, New York 10017
                            Telephone: 212-687-0099