UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/8/10

JOHN BROYLES,                                          :

                         Plaintiff,          :          08 Civ. 3391 (WHP)

              -against-                    :          MEMORANDUM AND ORDER

J.P. MORGAN CHASE & CO.,                      :

                     Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

           This action concerns Defendant J.P. Morgan Chase Bank, N.A.'s ("JPMorgan")

failure to pay Plaintiff John Broyles ("Broyles") a bonus.  Broyles asserts (1) breach of oral

agreement, (2) breach of implied-in-fact agreement, (3) unjust enrichment/quantum meruit, (4)

violation of Article 6 of New York Labor Law, (5) promissory estoppel, and (6) defamation.

JPMorgan moves for summary judgment dismissing all claims.  For the following reasons,

JPMorgan's motion is granted.

## BACKGROUND

           On September 20, 2007, Foster Smith ("Smith"), the managing director of

JPMorgan's global commodities group, offered Broyles a position as a commodities trader on

the natural gas desk.  (Defendant's Statement Pursuant to Local Civil Rule 56.1(a) of the

Material Undisputed Facts ("56.1 Stmt.") ¶¶ 13-15, 17, 44-46; Plaintiff's Opposition to

Defendant's Local Rule 56.1 Statement ("Pl. 56.1 Opp.") ¶¶ 13-15, 17, 44-46.)  Broyles claims

that Smith's offer included a bonus based on a percentage of Broyles' trading profits.  (Pl. 56.1

Opp. ¶ 16.)  Memorializing his offer, Smith emailed Human Resources noting that he

"communicated E[xecutive] D[irector] title w/ 150k base.  No guarantee."  (56.1 Stmt. Ex. 4:

Email from Foster J. Smith to Patricia Dever dated Sept. 20, 2007.)

    JPMorgan sent a formal offer letter to Broyles which he signed, dated, and

returned.  (56.1 Stmt. ¶¶ 21-41 & Ex. 9: Letter from Elizabeth Easow dated Sept. 21, 2007 (the

"Offer Letter") at JPMC 0004-A.)  The Offer Letter provided that Broyles's annual salary would

be $150,000, and included the following conditions:

- This letter contains the entire understanding of the parties with respect to the terms and conditions of the offer of employment and supersedes any prior verbal or written communication.  This offer may only be modified in a document signed by the parties referring specifically to this offer.  (Offer Letter at JPMC 0001-A.)

- You will be eligible to participate in the current Investment Bank Incentive Plan . . . while in effect, or any applicable successor Incentive Plan then in effect.  The payment and amount of any incentive compensation award under the Incentive Plan is in the complete discretion of the firm.  Subject to your being actively employed as of the date of payout, you will be eligible under the Incentive Plan to receive an annual incentive bonus which is intended to motivate future performance, and which may be based on individual achievement, business unit and overall corporate results and awarded under the terms of the Plan and in our sole discretion.  (Offer Letter at JPMC 0002-A.)

- You must be actively employed by the firm on the date that annual incentive compensation is awarded to be eligible for any incentive compensation.  If your employment terminates for any reason before the award date, whether the termination is initiated by you or the firm you will not earn or receive any award. . . . No employee or officer of the firm is authorized to make any oral promises to you about an incentive compensation award.  (Offer Letter at JPMC 0002-A.)

- Your offer of employment is subject to the terms and conditions outlined in the accompanying Attachment of the same date (which is incorporated into and made part of this offer letter) and all policies and procedures of JPMorgan, including but not limited to the Code of Conduct and the "employment at-will" doctrine. (Offer Letter at JPMC 0002-A; 56.1 Stmt. Ex. 15: Employment at Will policy ("Employment At Will Policy") at JPMC 0849.)

On December 31, 2007, Broyles's trading profits exceeded $23 million. (56.1 Stmt. ¶¶ 84-86.) However, beginning January 2, 2008, his portfolio experienced significant losses. (56.1 Stmt. ¶¶ 87-97.) In the three trading days that week, Broyles lost $3.6 million. (56.1 Stmt. ¶¶ 87-89.) His portfolio's losses accelerated the following week. On Wednesday, January 9, Broyles lost nearly $2.2 million, twice as much as on January 8. (56.1 Stmt. ¶¶ 91-92.) As the losses mounted, Smith tried to reach Broyles on the morning of January 10. (56.1 Stmt. ¶¶ 107, 109, 111.) However, Broyles did not arrive at the office until after noon time and his portfolio lost more than $5.2 million that day. (56.1 Stmt. ¶¶ 93, 116-28, 140.) During the week of January 7, Broyles' portfolio lost more than $12.6 million. (56.1 Stmt. ¶¶ 90-94.)

On January 16, Broyles endeavored to explain his late arrival on January 10 and his attempts to mitigate the losses. (56.1 Stmt. ¶ 136; & Ex. 30: Email from Broyles to Raymond Eyles, et al., dated Jan. 16, 2008.) The next day, Smith advised Broyles that his employment would be terminated if he did not resign and that, in any event, he would not receive an incentive compensation award for 2007. (56.1 Stmt. ¶ 146.) On January 18, Broyles advised Smith that he would "resign but . . . effectively consider this a termination." (56.1 Stmt. ¶¶ 148-46 & Ex. 32: Email from Broyles to Foster J. Smith dated Jan. 18, 2008.) Between January 14 and January 16, Broyles's portfolio lost an additional $6.9 million. (56.1 Stmt. ¶¶ 95-97.) JPMorgan did not pay Broyles any incentive compensation for 2007. (56.1 Stmt. ¶¶ 58, 153.)

3

After Broyles resigned, Smith met with JPMorgan's commodities traders and informed them that Broyles was no longer employed by the firm. (56.1 Stmt. ¶ 154.) Broyles contends that Smith told the traders that Broyles had engaged in "inappropriate conduct." (56.1 Stmt. ¶¶ 154-56; Pl. 56.1 Opp. ¶¶ 154-56.) Additionally, Broyles claims that on another unspecified occasion Smith stated that Broyles had "mismarked" his trading book. (56.1 Stmt. ¶¶ 157-59; Pl. 56.1 Opp. ¶¶ 157-59.) Smith denies making either statement. (56.1 Stmt. ¶¶ 154-58; Pl. 56.1 Opp. ¶¶ 154-58.) Broyles offers no support for his contention that these statements were made other than his own testimony.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

4

II. Contract Claims

The four elements of a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance of the contract, (3) defendant's material breach of the contract, and (4) resulting damages. Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004); Owens v. Gaffken & Barriger Fund, LLC, No. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *14 (S.D.N.Y. Sept. 21, 2009). Under New York law, "when the parties to a contract have memorialized their agreement in a writing which purports to be a complete and accurate integration, i.e., which embodies all of the mutual rights and obligations of the parties, the Court will exclude evidence of prior or contemporaneous agreements which would vary the terms of the written instrument." Lee v. Joseph E. Seagram & Sons, Inc., 413 F. Supp. 693, 700 (S.D.N.Y. 1976) (citing Mitchill v. Lath, 160 N.E. 646 (N.Y. 1928)); see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank, 90 F.3d 650, 659-60 (2d Cir. 1996).

Broyles claims breach of an oral contract. However, the Offer Letter states that it "contains the entire understanding of the parties with respect to the terms and conditions of the offer of employment and supersedes any prior verbal or written communication." If the Offer Letter is valid, it precludes any claim for breach of an oral agreement.

Broyles argues that the Offer Letter is unenforceable for two reasons. First, Broyles asserts that the Offer Letter is unenforceable because it incorporates JPMorgan's incentive plan, which affords unfettered discretion to JPMorgan in the award of incentive payments. This argument is without merit. Courts hold routinely that contractual provisions conferring absolute discretion on the employer to grant and pay bonuses may be enforced. See Canet v. Gooch Ware Travelstead, 917 F. Supp. 969, 985 (E.D.N.Y. 1996) ("where contractual

5

provisions assign the employer absolute discretion to grant and pay bonuses, those provisions

may be enforced"); McNabb v. MacAndrews & Forbes Group, Inc., No. 90 Civ. 5482 (CLB),

1991 WL 284104, at *6 (S.D.N.Y. Dec. 24, 1991), aff'd, 972 F.2d 1328 (2d Cir. 1992) ("A

discretionary bonus is precisely that and the Agreement creates no obligation on the part of

MacAndrews to pay McNabb an annual bonus."); Kaplan v. Capital Co. of Am. LLC, 747

N.Y.S.2d 504, 504 (1st Dep't 2002), lv. denied, 790 N.E.2d 275 (N.Y. 2003)  (rejecting

plaintiff's claim of an oral promise to pay a bonus when the handbook "clearly stated that its

terms alone would govern the employment relationship and that no other promises regarding the

terms of employment could be made, except by specific individuals and in writing"); Brennan v.

JPMorgan Sec., Inc., 801 N.Y.S.2d 230, 2004 WL 3314910, at *2 (N.Y. Sup. Ct. 2004) ("[a]

bonus may be entirely up to an employer's discretion").

        Second, Broyles contends that the Offer Letter is invalid because it incorporates

JPMorgan's employment at will policy which provides that "nothing set forth in [this] polic[y]

constitutes or creates a contract or guarantee of employment or confers any rights to continued

employment."  However, reference to an employment at will policy does not bar the Offer Letter

from operating as a valid contract.  See Ferrand v. Credit Lyonnais, No. 02 Civ. 5191 (VM),

2003 WL 22251313, at *13 (S.D.N.Y. Sept. 30, 2003); Hall v. United Parcel Serv. of Am.,

Inc., 76 N.Y.2d 27, 36 (N.Y. 1990); Kaplan, 747 N.Y.S.2d at 504.

        The terms of the Offer Letter are clear.  They constitute "the entire understanding

of the parties with respect to the terms and conditions of the offer of employment and

supersede[] any prior verbal or written communication."  Even if an oral understanding had been

reached during the September 20 conversation, the Offer Letter—signed by Broyles a few days

later—superseded it.  Moreover, Broyles does not allege that he received any written

6

commitment from JPMorgan regarding a 2007 incentive award. Consequently, the breach of an oral agreement claim must be dismissed.

III. Quasi-Contract Claims

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. . . . A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. . . ." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (N.Y. 1987); see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); BroadVision Inc. v. Gen. Elec. Co., No. 08 Civ. 1478 (WHP), 2009 WL 2603145, at *3 (S.D.N.Y. Aug. 13, 2009) (("[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved.") (citing Julien J. Studley, Inc. v. N.Y. News, Inc., 512 N.E.2d 300, 301 (N.Y. 1987)). Here, a valid written agreement governed the relationship between JPMorgan and Broyles. That contract disposes of Broyles's quasi-contract claims of quantum meruit, unjust enrichment, implied-in-fact contract, and promissory estoppel.

IV. New York Labor Law Claim

Wages, within the meaning of the New York Labor Law, do not include bonuses, profit-sharing, or other forms of incentive compensation unless the incentive compensation is

7

already earned by the employee. See Truelove v. Northeast Capital & Advisory, Inc., 738

N.E.2d 770, 771-72 (N.Y. 2000); Dean Witter Reynolds, Inc. v. Ross, 429 N.Y.S.2d 653, 658

(1st Dep't 1980). "An employee's incentive compensation is 'earned' when the employee

acquires a vested interest in the award and its payment is not conditioned [] on some occurrence

or [otherwise] left to the discretion of the employer. Bonuses and similar incentive

compensation generally become vested by contract or by the awarding of a specified amount."

Aledia v. HSH Nordbank AG, No. 08 Civ. 4342 (BSJ), 2009 WL 855951, at *3 (S.D.N.Y. Mar.

25, 2009); see also Truelove, 738 N.E.2d at 771-72; Brennan, 2004 WL 3314910, at *2

(dismissing New York Labor Law claim and stating that plaintiff did not have a claim for wages

since "wages are not forfeitable as are the bonuses described in [JPMorgan's] Plan"). The Offer

Letter is clear that any incentive award is left to the discretion of JPMorgan. Accordingly,

summary judgment on Broyles's New York Labor Law claim must be granted.


V.   Defamation

        As for Broyles's defamation claim, the only evidence he submits is inadmissible

hearsay. That alone requires that JPMorgan's motion for summary judgment be granted. See

Albert v. Loksen, 239 F.3d 256, 266 (2d Cir. 2001) ("When challenged on a motion for summary

judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous

statement was made.").

        Moreover, even if Broyles offered admissible evidence of Smith's statement(s) to

the traders, summary judgment is appropriate because such statements are covered by the

common interest privilege. "Courts have long recognized that the public interest is served by

shielding certain communications, though possibly defamatory, from litigation, rather than risk

stifling them altogether." Liberman v. Gelstein, 80 N.Y.2d 429, 437 (N.Y. 1992). This privilege applies to statements made to fellow employees. Liberman, 80 N.Y.2d at 437; Loughry v. Lincoln First Bank, 494 N.E.2d 70, 73 (N.Y. 1986); Curren v. Carbonic Sys., Inc., 872 N.Y.2d 240, 242 (3d Dep't 2009); Sanderson v. Bellevue Maternity Hosp. Inc., 686 N.Y.2d 535, 537 (3d Dep't 1999).

The common interest privilege can be "dissolved if the plaintiff can show that defendant spoke with malice." Liberman, 80 N.Y.2d at 437. "Malice includes spite, ill will, knowledge that the statements are false or reckless disregard as to whether they are false . . . Spite and ill will refer to the speaker's motivation for making the allegedly defamatory comments, not to the defendant's general feelings about the plaintiff." Curren, 872 N.Y.2d at 242 (internal citations omitted). However, Broyles offers no evidence that Smith spoke with malice or ill will. Accordingly, Broyles has not satisfied his burden to overcome the common interest privilege.

## CONCLUSION

For the foregoing reasons, JPMorgan's motion for summary judgment is granted, and this action is dismissed. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: March 8, 2010
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

9

*Counsel of Record*:

Brian O'Keafe Kennedy, Esq.
535 Fifth Avenue
23rd Floor
New York, NY 10005
*Counsel for Plaintiff*

Frederic L. Lieberman, Esq.
J.P. Morgan Chase Legal Department
1 Chase Manhattan Plaza, 26th Floor
New York, NY 10005
*Counsel for Defendant*